Gray v. ResCap Borrower Claims Trust. Thank you, Your Honor. My name is Susan Gray. I represent the appellants, Patricia J. McNerney, and myself as her attorney on the attorney fee claims. We come from Ohio, from Cuyahoga County, Ohio, where the loan at issue in this case was originated. Our county has been described as ground zero of the foreclosure crisis. James Rokakis, our county treasurer, I've heard speak many times at many venues. And he says over and over that only New Orleans had greater devastation from foreclosure and abandoned homes than we did. And he always adds, New Orleans had Katrina, we had the banks. The banks, in this case, the non-bank mortgage lender was Homecomings Financial, which had some sort of affiliation with GMAC, which ultimately entered into a settlement that resulted in Ms. McNerney being entitled to have her loan canceled. The lender never told us that. We never learned it until after she had already been driven from her home by the conduct of the lender. In this case, the lender contrived to do a laundry list of the things that lenders do to trick people into loans they can't afford. In this case, I wish to emphasize, and I can't emphasize enough, Ms. McNerney was honest. All of her conduct was legitimate. She had two legitimate reasons for seeking a refinance. One, because she was ordered by her divorce decree, and the other, because she needed a more affordable payment. She made those reasons very clear, and if she couldn't get a lower payment, she couldn't afford the loan. That was clear to Homecomings. That was clear to the broker. Homecomings acted affirmatively to trick Fannie Mae and to trick Ms. McNerney into underwriting the loan by stating false information in the underwriter, desktop underwriter. It's Fannie Mae's automated desktop underwriter. Homecomings affirmatively presented this false information, which overstated her assets. It treated her IRA as liquid assets, though it admitted in trial an IRA is not liquid assets, and it overstated her income by over $1,000. Even with the overstated income and the overstated assets, the underwriter reported it as a risky loan. The loan never would have happened if it had been correctly underwritten. Homecomings had an affirmative duty under Truth in Lending to disclose the material terms of the transaction, and I wish to emphasize it had a duty to disclose the material terms, including that she had a right to rescind. It had an additional duty to provide two notices of right to rescind. In 1635A, this is conjunctive. It has a duty to disclose and, in addition, provide two documents to effect the rescission. It did neither. It did not disclose. It provided one document, and that document was tucked away in an over-70-page stack of documents, and if she had ever been able to find the document and understand its import, it didn't matter because the deadline to rescind was December 31. It was printed right on the document that the deadline was December 31. We're reviewing the order of the district court. Yes. Which affirmed the bankruptcy court's decision disallowing these claims. That's correct, Your Honor. Yes. What is our standard of review, and what should we be focusing on here? You're speaking from the get-go as if there were no prior proceedings, but perhaps we'll focus on exactly what errors you'd like to focus us on. Well, the errors I would like to focus on are that the district court admitted hearsay evidence and, in fact, decided important issues based on the hearsay evidence of Sarah Lathrop. The bankruptcy court did that? And so did the district court. And so did the district court. What kind of a hearing did Judge Engelmeyer hold? Evidentiary? No, it was just oral argument, Your Honor. All right. Just oral argument on appeal. So he didn't present evidence. No evidence was presented to Judge Engelmeyer. Only what was in the bankruptcy court. And the bankruptcy court based its ruling on the hearsay affidavit of Sarah Lathrop, and the district court tracked exactly in its findings of fact that same hearsay evidence from Sarah Lathrop. And this is critically important with regard to important matters, including the Consumer Sales Practices Act claim. Both the bankruptcy court — Let me interrupt you about the Consumer Sales Practices Act. My understanding was you are making those claims for the first time on appeal. Did you present your Consumer Sales Practices Act claim to the bankruptcy and district court? Yes. You did. Oh, yes. At what point? It was part of the claim itself. It was written in the claim document, and it was argued and decided upon by the bankruptcy court judge. But you're arguing that it applies to homecomings conduct because of a 2007 amendment. Is that right? It applies to homecomings conduct in 2009 when homecomings filed a second foreclosure case on a loan that had been rescinded five years before. And you rely on the 2007 amendment in a case called Powers, but I didn't see that having been presented to the district court. What I presented to the district court was that when a lender violates the law, the fact that the law was amended was discussed in the bankruptcy court, that it was amended in 2007. And the fact that the lender engaged in debt collection on a loan that had been rescinded was argued as having violated the CSPA, and it certainly was argued in the complaint or in the counterclaim filed in that complaint. I didn't argue the specific case of Powers, but I argued the analysis. And then I brought Powers to the attention because it exactly is on all fours. On appeal. On appeal, that particular case, but not the argument, Your Honor. Thank you. So the hearsay is important because the bankruptcy court argued that the Anderson case was the prevailing case on the grounds that, for some mythical two days, homecomings served as a servicer on this loan. It could only have concluded that homecomings was a servicer on this loan by relying on the hearsay testimony of Sarah Lathrop. But you say the district court relied on it, and yet in its opinion, the court said, well, I don't believe the bankruptcy court did rely on the Lathrop declaration. In any event, I'm not relying on any factual assertions in the Lathrop declaration. So how did the district court rely on hearsay? It did because it also affirmed the bankruptcy court ruling that the Anderson case was the relevant case. And the Anderson case, the Ohio Supreme Court case, that Anderson case ruled that a servicer can't be held liable, that a servicer isn't covered by the Consumer Sales Practices Act. So it had to have concluded that homecomings was a servicer. And homecomings never was a servicer. The transfer of servicing, which is just a document presented by Lathrop, was dated two days before this loan ever took place. This loan actually took place on January 3. That has been admitted. That was admitted by the broker. That was admitted by the evidence, Ms. McNerney. And that was admitted by counsel for homecomings in the bankruptcy case. Ms. Gray, you've reserved some time. I've given you some extra time, but you've reserved three minutes. Oh, my light's on. Thank you very much, Your Honor. Good morning, Your Honors. May it please the Court, Jordan Wishnu of Morrison & Forster for the appellee of the Rescat Barrow Claims Trust. Your Honors, in 2015, the bankruptcy court- Could you lift the microphone up a little bit so we can hear you? You can adjust the microphone itself. Yeah. Is that better, Your Honor? Yeah. Thank you. In 2015, the bankruptcy court correctly determined that the six causes of action before this court failed as a matter of law for a variety of reasons. And one year ago, Judge Engelmeyer in the Southern District affirmed Judge Martin Glenn's exhaustive and well-reasoned decision. The appellant suggests that the lower courts failed to liberally construe the statutes at issue, but she fails to cite any relevant legal authority to demonstrate how an alternate interpretation of the facts in the law would yield a different result. As a result, the only appropriate outcome is for this court to affirm the decisions of the bankruptcy and district courts. First, as it relates to the TILA claim, Judge Engelmeyer's interpretation of paragraph 36 of the appellant's 2004 counterclaim is entirely reasonable. A claimant cannot plead a claim when that claim only comes into existence upon the occurrence of a predicate event. Homecoming's purported failure to rescind the loan could not have occurred until 20 days after June 16, 2004. Therefore, it's impossible for the damages claim to have been properly pled on June 16. Since the damages claim was not pled until 2006, any TILA claim under sections 1635 and 1640 of Title XV of the U.S. Code are untimely and should be disallowed. Second, as it relates to the negligence claim, the appellant cannot identify any case law providing the lender has a special relationship with the borrower, which creates the requisite duty of care. Without the existence of that specific duty, from homecomings to the borrower, this cause of action cannot exist, and again, the lower court decisions must be upheld. Similarly, the disallowance of the causes of action for intentional and negligent misrepresentation relating to the origination of the loan must also be upheld. The allegations are predicated on the actions of the broker, OMC, who is never an agent of homecomings, as is clear from the text of the broker agreement. Therefore, homecomings cannot be liable for OMC's actions. Moreover, it is uncontested that the borrower and homecomings never interacted with one another before the closing, so it's factually impossible for there to have been a misrepresentation by homecomings to the borrower. Moreover, there is no basis to establish a duty to disclose from homecomings to the borrower, as no special relationship existed between the parties. Therefore, any loan origination-based claims against homecomings similarly fail. The nonexistence of an agency relationship between OMC and homecomings is also a fatal deficiency to the borrower's conspiracy claims against homecomings arising from the origination of the loan. As the district court noted in its decision at page 19, the conspiracy claim predicated on an alleged misrepresentation and breach of fiduciary duties centers on the non-debtor broker's actions, in other words, OMC's actions. The appellant only makes conclusory allegations about any concerted action between homecomings and OMC. Such allegations lack the requisite concreteness to sustain such a claim. In addition, to the extent the borrower argues that homecomings' foreclosure-related actions also serve as the basis for a conspiracy claim, the appellant cannot overcome the applicability of the witness immunity doctrine, which protects homecomings from liability based on factual statements it submitted in connection with a foreclosure proceeding. Therefore, the disallowance of this claim must also be affirmed. The disallowance of the appellant's claim under the Ohio Consumer Sales Practices Act must also be upheld. The appellant relies on a single case from a 2015 intermediate appellate court decision to support her strained interpretation of the underlying statute. As your honors have noted, the better decision on this issue is from the Ohio's high estate court in 2013, the Anderson case, which was cited by both the bankruptcy and the district courts. That court held that the actions at issue constitute collateral services necessary to effectuate a pure real estate transaction. Therefore, homecomings' alleged wrongful acts related to its foreclosure activities fall outside the four corners of the Ohio CSPA, and the appellant does not have a valid claim against homecomings. Finally, your honors, the appellant cannot sufficiently plead a breach of privacy claim on account of the actions of homecomings' employees under either a publication or a wrongful intrusion theory. The facts do not adequately demonstrate that private information was disclosed to the public at large, nor do the facts support an intrusion onto private activities. Accordingly, the disallowance of this cause of action must also be upheld. In conclusion, the appellant may disagree with the decisions and outcome of the proceedings below. However, there is no valid basis to disrupt those decisions. The appellant has not demonstrated to this court that the bankruptcy court misinterpreted the relevant legal principles in such a manner that require further proceedings to correct any such mistakes. Accordingly, the Rescat Borrowers' Claims Trust respectfully asks that your honors affirm the district court's decision to disallow Ms. McInerny's claims and the related fee claims sought by Ms. Gray that are predicated on the allowance of such invalid claims. Thank you, your honors. Thank you. All right, Ms. Gray, you have reserved three minutes. First of all, I would like to respond to the statement that the claim was not ripe. Obviously, the claim became ripe 20 days later. I would also like to emphasize that 1640, 15 U.S.C. 1640, states that the borrower is entitled to damages, costs, and attorney fees in any case where she has been found to have a right to rescind. That would be 1640 A. 3. In the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under 1635, the cost of the action together with original attorney fees as determined by the court. So in her counterclaim in 2004, she specifically stated this counterclaim is brought to enforce her right to rescind. It was not impossible that she brought a counterclaim to enforce her right to rescind at the same time that she rescinded. It was not impossible. She did it. And she clearly stated it. And she clearly stated what the lender should do. And she clearly asked for damages for the lender's failure to do it. And the lender had it in its power to avoid all future damages. The lender could have made it moot. Congress has provided a roadmap in 1640, 15 U.S.C. 1640. This should have been an incredibly simple case. This lady should not have been dragged through litigation since 2004 through five courts just to try to exercise her right to rescind under 1635. This should not have happened. Therefore, because she followed the rules, because they did not follow the rules, because they drove her from her home, she is seeking damages through her claim in the bankruptcy court. Her claim should be allowed. The objection should be overruled. The court of appeals in affirming the denial of her claim should be reversed. And she should be awarded her damages. Thank you very much. Thank you, Ms. Gray. We'll reserve the